cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). A sentence six remand is comparable to a Fed. R. Civ. P. 60(b) motion for a new trial based on newly discovered evidence. Normally, when new evidence is discovered during the pendency of an appeal, the party bringing a rule 60(b) motion will first file it with the district court. If the district court indicates that it is willing or likely to grant the motion, the party will then bring a motion in the appeals court "for a remand of the case in order that the District Court may grant the motion for new trial." *First Nat'l Bank of Salem v. Hirsch*, 535 F.2d 343, 346 (6th Cir. 1976).

We have never addressed whether the rule 60(b) procedure for new evidence discovered during the pendency of an appeal also applies to motions brought under sentence six of 42 U.S.C. § 405(g). Both the Second and the Ninth Circuit have addressed this question and have held that the rule 60(b) procedure should be followed unless the appellate court is able to determine that a new hearing is required as a matter of law. *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991); *Goerg v. Schweiker*, 643 F.2d 582, 583-84 (9th Cir. 1981). We now choose to adopt this approach. Thus, because the new evidence proffered by Howard is not so compelling that a remand is required as a matter of law, we hold that Howard should have followed the rule 60(b) procedure for new evidence discovered during the pendency of an appeal. Her motion is denied without prejudice.

**REVERSED and REMANDED. MOTION DENIED.**

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0016P (6th Cir.)
File Name: 02a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JIMMIE L. HOWARD,
        *Plaintiff-Appellant,*

        *v.*                                   No. 00-1310

COMMISSIONER OF SOCIAL
SECURITY,
        *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70098—Robert H. Cleland, District Judge.

Argued: July 31, 2001

Decided and Filed: January 11, 2002

Before: CLAY, GILMAN, and WALLACE, Circuit
Judges.

---

[*]The Honorable J. Clifford Wallace, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:**  Lewis M. Seward, SEWARD, TALLY & PIGGOTT, Bay City, Michigan, for Appellant.  Edward P. Studzinski, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, REGION V, Chicago, Illinois, for Appellee.  **ON BRIEF:**  Lewis M. Seward, SEWARD, TALLY & PIGGOTT, Bay City, Michigan, for Appellant.  Edward P. Studzinski, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, REGION V, Chicago, Illinois, for Appellee.

———————————

**OPINION**

———————————

J. CLIFFORD WALLACE, Senior Circuit Judge.  An administrative law judge (ALJ) denied Howard's application for Social Security disability benefits, finding that Howard was not disabled because she could perform a significant number of jobs in the economy despite her impairments.  The Appeals Council denied Howard's request for review, leaving the ALJ's decision as the final decision of the Social Security Commissioner (Commissioner).  20 C.F.R. § 416.1481.

Howard sought review of the Commissioner's final decision in district court pursuant to 42 U.S.C. § 405(g), resulting in the district court affirming the Commissioner's decision.  Howard appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

Howard argues that the district court erred when it upheld the Commissioner's finding that she was not disabled and could perform a significant number of jobs in the economy. In the alternative, Howard brings a motion to remand under sentence six of 42 U.S.C. § 405(g).  We deny the motion but **reverse** and **remand** on the merits.

Howard also contends that the ALJ mischaracterized the treatment notes when he concluded that they contained only "a few scattered blood pressure readings," or because he stated that the records document "no edema in the extremities." While it appears to us that these conclusions are wrong and indicative of the ALJ's selective approach to evidence summation, they are not sufficiently weighty to compel us to conclude that the ALJ's "other work" determination was unreasonable or was unsupported by substantial evidence.

Howard further argues that the ALJ mischaracterized her daily activities that were recorded in her daily activity charts. She argues that the ALJ did not give credence to her complaints of pain in those charts.  The ALJ, however, determined that Howard's complaints of pain were "less than fully credible." Credibility determinations are entitled to considerable deference.  *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  Because Howard's inconsistent testimony provides a reasonable basis for this credibility determination, the ALJ's characterization of her daily activities and, consequently, any portion of his ultimate conclusion about her ability to perform "other work" that is dependent upon it is supported by substantial evidence.

Thus, the district court's judgment is reversed and remanded to the district court.  The district court is directed to remand the action to the Commissioner with instructions to reconsider Howard's application in a manner consistent with this opinion.

**II.**

Howard asks this Court, as an alternative to a reversal, to remand her case to the Commissioner under sentence six of 42 U.S.C. § 405(g) for it to consider the Disability Determination Service's March 15, 2000 determination that she is disabled as of that date.  Sentence six provides that a court "may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good

finding that they "consist[] mostly of handwritten gobblegook notes from the doctor" that have "no probative value in this case." The notes represent twenty-six visits between March 17, 1995 and November 11, 1996. The upper left-hand corner of each page contains a space for the doctor to record the patient's complaint. The lower left-hand corner contains a space for the doctor to record his impressions. These combined reports contain numerous legible references to Howard's ailments. They include ten references to hypertension in the complaint space (seven of these references worded as the doctor's findings or opinions, not complaints) and ten references to hypertension in the impression space; five references to degenerative disc disease in the complaint space (four of these references worded as the doctor's findings or opinions, not complaints) and five references to the same in the impression space; six references to arthritis in the right knee in the complaint space (four of these references worded as the doctor's findings or opinions, not complaints) and six references to the same in the impression space; four references to depression in the complaint space (three of these references worded as the doctor's findings or opinions, not complaints) and five references to the same in the impression space; three references to panic attacks (two of these references worded as the doctor's findings or opinions, not complaints) and three references to the same in the impression space; three references to anemia in the complaint space (two of these worded as the doctor's findings or opinions, not complaints) and three references to the same in the impression space; two references to nervousness or anxiety in the complaint space and one in the impression space; as well as references to tenitis, myalgia, edema, allergies, arythmia, bursitis of the right shoulder, and arthritis of the cervical in the impression space at least once. Indeed, these treatment notes represent a substantial portion of Howard's relevant medical history from which Dr. Levin's conclusions were drawn. They are often illegible but, as our review demonstrates, more often not. Because the ALJ disregarded this significant portion of the record as having no probative value, his decision that Howard could perform "other work" is not supported by substantial evidence.

## I.

We apply the same standard of review as the district court and will uphold the Commissioner's decision if it is supported by substantial evidence. *Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Howard's Social Security disability determination is made in accordance with a five step sequential analysis. First, Howard must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, Howard must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if Howard is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and Howard has a severe impairment, the Commissioner will then review Howard's residual functional capacity (RFC) and relevant past work to determine if she can do past work; if so, she is not disabled. 20 C.F.R. § 404.1520(e). The ALJ determined that the first four parts did not entitle Howard to disability benefits, so this case turns on the fifth: if Howard's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find her disabled. 20 C.F.R. §404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

To meet the burden of showing that Howard could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [Howard] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [Howard's] individual physical and mental impairments.'" *Id.* (citations omitted).

Taking into account Howard's RFC, age, education, past work experience, and the testimony of the vocational expert (VE), the ALJ determined that Howard was able to perform other work and was, therefore, not disabled. Howard argues that substantial evidence does not support this determination.

### A.

Howard first argues that substantial evidence does not support the ALJ's conclusion that she could perform other work because the ALJ's formulation of the RFC and the hypothetical question posed to the VE do not "accurately portray [her] individual physical and mental" impairments.

The ALJ posed two hypothetical questions to the VE. In the first, he asked whether there were any jobs in the region for a person with the limitations testified to by Howard. The VE answered that there were not. The ALJ then discounted Howard's pain testimony and relied upon four exhibits in the record to formulate a second hypothetical question. The ALJ asked the VE whether a person with such characteristics would be able "to perform the full ranges of light, medium, and heavy unskilled work." The VE responded that a "majority of the jobs in all exertional levels could still be performed" by such a person and proceeded to identify several specific jobs and the number of openings for those jobs in the region. The ALJ's determination of Howard's RFC is, in substance, the same as this second hypothetical question.

and mental impairments; a defect which, as we have stated, is fatal to the VE's testimony and the ALJ's reliance upon it.

That portion of the hypothetical question drawn from the medical report in Exhibit 25 is incomplete. It tells us what Howard can do but tells us nothing about Howard's ailments. The ALJ should have included the diagnosis from that same report which states that Howard suffers from degenerative disc disease, iron deficiency anemia, hypertension, and osteoarthritis. The ALJ did find that Howard suffered from degenerative disc disease and osteoarthritis. But this finding was not included in the hypothetical question posed to the VE as it should have been.

Further, as we stated earlier, the ALJ failed to include Dr. Levin's uncontradicted conclusions in Exhibit 31. Because the hypothetical question did not include the diagnosis portion of Exhibit 25 or the diagnosis and evaluation in Exhibit 31, it does not accurately portray Howard's condition. Because the VE's testimony was based upon this inaccuracy, it cannot serve as substantial evidence for the ALJ's conclusion that Howard could perform "other work."

Finally, that portion of the hypothetical question taken from Exhibit 32 does not accurately portray Howard's mental state. Interestingly, the ALJ ultimately found that Howard had the major depressive disorder described in this exhibit. He did not, however, include this finding in the hypothetical question. Thus, the hypothetical question does not paint an accurate picture of Howard's impairments and the testimony of the VE in reliance upon the hypothetical question is not substantial evidence for the ALJ's conclusion that Howard could perform "other work."

### 3.

Howard also argues that the ALJ mischaracterized much of the evidence in his decision to such a degree that his decision cannot be supported by substantial evidence. First, Howard argues that the ALJ should have given weight to the treatment notes in Exhibit 45. The ALJ dismissed the treatment notes

Howard's RFC is to be an "assessment of [her] remaining capacity for work" once her limitations have been taken into account. 20 C.F.R. § 416.945. It is an assessment of what Howard can and cannot do, not what she does and does not suffer from. The hypothetical question posed to a VE for purposes of determining whether Howard can perform other work, on the other hand, should be a more complete assessment of her physical and mental state and should include an "accurate[] portray[al] [of her] individual physical and mental impairment[s]." *Varley*, 820 F.2d at 779; *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975) (per curiam). Thus, while the RFC should focus on Howard's abilities or, in other words, what Howard can and cannot do, the hypothetical question should focus on Howard's overall state including Howard's mental and physical maladies.

**1.**

Taking into account the purpose of the RFC, we first address whether the ALJ's description of Howard's RFC accurately reflects Howard's abilities. If it does, then the ALJ's conclusion, inasmuch as it relies upon the RFC, is supported by substantial evidence. Howard contends that the RFC is not supported by substantial evidence because it does not accurately recount her physical and emotional problems. This argument misstates the purpose of the RFC. While we acknowledge that Howard's maladies should inform an assessment of her abilities, this does not mean that the RFC must enumerate them.

The ALJ relied upon four exhibits when he formulated Howard's RFC. Exhibit 25 is a March 17, 1995 medical report from one of her physicians, Dr. Levin. The RFC, with one exception, accurately reflects Dr. Levin's conclusions about Howard's abilities. The one exception is that the RFC states that Howard is able to squat and climb stairs while the report upon which the ALJ relied for this part of the RFC states that it is harder for Howard to squat and climb when her "low back pain is significant." While it would have been more accurate to include this finding in the RFC, this

As we said, the RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities. In this portion of the RFC, the ALJ describes both Howard's abilities and her state of being. This would normally be an insignificant oversight. However, the ALJ's selective inclusion of only those portions of the report that cast Howard in a capable light suggests that he only considered part of the report in formulating his conclusion that Howard "need[s] to perform work of a simple and relatively nonstressful nature." As a result, we conclude that the RFC does not accurately describe Howard's abilities and that the ALJ's decision, which is based upon it, is not supported by substantial evidence.

Howard further argues that the ALJ failed to consider her global assessment functioning (GAF) score as reported in four different reports from Genesee County Community Mental Health Services. Howard argues that a GAF score is "an overall evaluation of Ms. Howard's emotional mental health." While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.

**2.**

Taking into account the purposes of the hypothetical question, we next address whether the hypothetical question accurately portrays Howard's physical and mental state or, in other words, whether the VE's testimony in response to the hypothetical question may serve as substantial evidence in support of the ALJ's finding that Howard could perform other work. We have already indicated that the RFC failed to describe accurately Howard's *abilities* in several respects. Since the hypothetical question is nearly identical, it suffers from the same defects. But this is not all. The hypothetical question also fails to describe accurately Howard's physical

oversight, if it can be called that, is not so significant as to justify a finding that this part of the RFC is not supported by substantial evidence.

Exhibit 31 is a medical report prepared by Dr. Levin and submitted to the Michigan Department of Social Services on February 24, 1996. The portion of the RFC taken from Exhibit 31 does not accurately reflect either the contents of the Exhibit or Howard's abilities. In Exhibit 31, Dr. Levin opines that, because of her hypertension and panic attacks, Howard should never be exposed to the following working conditions: "[u]nprotected [h]eights, [m]oving [m]achinery, [n]oise and [v]ibration, [e]xtreme [t]emperatures, [d]ust, [f[umes and [g]ases." The ALJ relies on this Exhibit to support his conclusion that Howard has "no vocationally significant problem due to high blood pressure," when the Exhibit states exactly the opposite.

In his decision, the ALJ states that he is not bound by Dr. Levin's "grossly restrictive" conclusions in this Exhibit because there are no "clinical or laboratory" findings in the record to substantiate them. This is not the case. The medical report in Exhibit 31 asks the doctor to make findings "based on [his] clinical evaluation and/or other test results." Thus, it would appear that Dr. Levin believed that his opinion was so based, at least in part. This assumption is substantiated by Dr. Levin's treatment notes in Exhibit 45. These notes document Dr. Levin's findings from eighteen visits by Howard between March, 1995 and July, 1996 and they include laboratory test results and numerous prescription authorizations.

Provided that they are based on sufficient medical data, "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Dr. Levin's finding about the effect Howard's hypertension had on her ability to work is a medical opinion that is based upon numerous clinical visits with the patient. We are unaware of, and the Commissioner has failed to identify, a medical report

in the record that is contrary to Dr. Levin's report. Moreover, Dr. Levin's conclusions are supported by another physician, Dr. Sarapara. They are, therefore, entitled to complete deference. Because the ALJ did not include them in the RFC, his decision is not supported by substantial evidence.

Next, exhibit 32 is an Intake Diagnostic Evaluation from Genesee County Community Mental Health Services dated March 7, 1996. The portion of the RFC taken from the intake report in Exhibit 32 states that Howard is "able to take care of basic needs; appearance and posture appropriate; facial expressions within normal limits; amplitude and quality of speech within normal range; . . . pleasant, cooperative, and behavior within normal limits; affect within normal range; thought process within normal range; no suicidal ideation; need to perform work of a simple and relatively nonstressful nature."

The ALJ's summary is taken primarily from section E of the intake report which is entitled "Mental Status." The last phrase in the RFC, which says that Howard has a "need to perform work of a simple and relatively nonstressful nature," appears to be the conclusion the ALJ reaches based upon the intake report. A review of the entire intake report, however, reveals that the ALJ included only those portions of the intake report which cast Howard in a capable light and excluded those portions which showed Howard in a less-than-capable light. For example, the intake report in Exhibit 32 also states that Howard is experiencing "fear, anxiety, apprehension, depression, and sadness"; that Howard experiences "hallucinations"; that Howard has an "impaired attention span [and an] impaired concentration ability"; that Howard has impaired recent and remote memory; that Howard suffers from obsessions, an eating compulsion, and a fear of heights and closed spaces. Further, the intake report concludes by diagnosing Howard with "major depressive disorder[,] single episode[,] severe [without] psychotic effects [and] panic disorder [without] agoraphobia." All this is absent from the RFC.