**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-1141

WILLIAM GONZALEZ-RODRIGUEZ,

Plaintiff, Appellant,

v.

JOANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini-Ortiz, Senior U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Lynch, Circuit Judges.

Melba N. Rivera Camacho on brief for appellant.
H.S. Garcia, United States Attorney, Camille L. Velez-Rive, Assistant U.S. Attorney, and Dino Trubiano, Assistant Regional Counsel, on brief for appellee.

October 7, 2004

**Per Curiam**. Claimant William Gonzalez-Rodriguez appeals from the judgment of the district court affirming the denial of Social Security disability benefits. He raises essentially three arguments in support of his appeal, and we reject these arguments for the following reasons.

1. Mental Impairment. In support of the argument that his mental impairment is disabling, claimant primarily relies on the consultative examination performed by Dr. Rivera. Claimant argues that this evaluation shows debilitating limitations and that these limitations have been confirmed in the notes from his treatment at the Carolina Mental Health Center. What claimant ignores, however, is the fact that both the consultative examination and his treatment occurred after his insured status had expired. As a result, these sources are of limited value in determining the extent of claimant's mental impairment prior to the expiration of this status. See Evangelista v. Secretary of Health and Human Services, 826 F.2d 136, 140 n.3 (1st Cir. 1987) (the issue is whether or not the claimant is incapacitated as of the date his insured status expires).

Further, during the period of time when claimant was insured, the only evidence of a mental impairment is the intake evaluation conducted at the mental health center in December 1997. This evaluation indicates that claimant, in the relevant time frame, was suffering from only a mild mental condition. Claimant responds to

this evidence by arguing that the administrative law judge (ALJ) was interpreting raw medical data in deciding to credit the Global Assessment of Functioning (GAF) score of 66. However, the GAF rating system (and the explanation provided by DSM IV concerning how the system works) simply is not raw medical data; rather, the system provides a way for a mental health professional to turn raw medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning. See Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (noting that a GAF score may be of "considerable help" to an ALJ in formulating a claimant's mental RFC).

The fact that claimant did not receive any treatment for his mental impairment during his insured status is evidence that this impairment was not bothersome enough to require treatment. See Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (gaps in the medical record are evidence that a claimant's complaints are not as severe as alleged). And, although the ALJ accepted for the sake of argument that claimant did have the limitations found by the non-examining clinical psychologist, the ALJ's ultimate finding -- that "[m]entally, the claimant was able to perform unskilled work tasks without significant limitations" -- was supported by substantial evidence. That is, the ALJ was not required to conclude that

claimant's mental condition imposed any significant limitations on him during the relevant time.

2. <u>The Vocational Expert's Testimony</u>. As pointed out by claimant, the response of the vocational expert (VE) to the ALJ's second hypothetical containing the mental limitations imposed by the non-examining clinical psychologist is not clear. However, even assuming that claimant's interpretation of the VE's answer is correct, this does not help claimant, since the ALJ made the sustainable finding that claimant's anxiety disorder did not significantly limit his ability to perform simple tasks. Thus, the first hypothetical posed by the ALJ -- which did not contain <u>any</u> mental restrictions -- has substantial support in the record, and, in response to this hypothetical, the VE listed jobs that claimant could perform.

Claimant's only other objection to the ALJ's hypothetical is that the ALJ did not include as a limitation Dr. Cruz's opinion that claimant could not drive. Claimant argues that this limitation would prevent him from working as a messenger or porter because such work involves driving. Claimant, however, cites no support for this argument, and, in any event, claimant does not contend that his inability to drive would prevent him from working as a clerk, the third job mentioned by the VE.

3. <u>Complaints of Pain</u>. Claimant's primary complaints of pain concern his chest and back. As for the extent of the chest pain,

claimant contends that it is disabling because any exertion brings on the pain, and due to the pain, he cannot lift even a gallon of milk.  The findings of claimant's treating physician, Dr. Cruz, do not support such limitations.  In particular, Dr. Cruz opined that, despite the heart condition and the associated chest pain, claimant occasionally could lift up to ten pounds and could walk for four hours per day.  Further, the non-examining cardiologist did not even think that claimant's heart condition was severe.

In relation to his back condition, claimant argues that the finding of a herniated disc at L5-S1 supports his allegations of disabling back pain.  While such a condition obviously can be expected to produce pain, evidence of treatment for this pain is sparse.  Claimant apparently was seen for his back only once in 1995 (when an electromyographic study of his lower extremities was normal) and once in 1996.  And, aside from the February 1997 C-T scan showing the herniated disc, claimant was seen only twice in 1997.  This is evidence that claimant's back pain was not as severe as alleged.  See Irlanda Ortiz, 955 F.2d at 769.

Further, claimant gave conflicting accounts of how his pain affected his exertional abilities.  In March 1998, claimant completed a report of daily activities, in which he indicated that he required help with his personal needs and that he could not perform any household chores.  Yet, when he was being interviewed by Dr. Rivera, in April 1998, claimant reported that he could take

care of his personal needs and <u>could</u> do some household chores such as dishwashing and mopping.  Finally, we note that the ALJ <u>did</u> credit claimant's complaints of pain to a large degree by accepting the limitations imposed by Dr. Cruz and by including these restrictions in the hypotheticals presented to the VE.  For example, the ALJ cited, as a limitation, claimant's inability to bend, and this was one of claimant's primary complaints.  The ALJ's conclusion that claimant's complaints of disabling pain were not entirely credible thus has substantial support in the record.

The judgment of the district court is <u>affirmed</u>.