**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0162n.06
Filed: February 24, 2009

No. 08-1586

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ADDISON WHITE, JR., | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellee.** | ) | |
| _____ | ) | |

**Before: MERRITT, MOORE, and COLE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Addison White, Jr.,

appeals from the district court's judgment affirming the decision of the Commissioner of Social

Security, which denied his claim for disability insurance benefits under 42 U.S.C. §§ 416(i), 423.

White makes five arguments on appeal: (1) the Administrative Law Judge ("ALJ") erred by not

properly considering the opinions of White's treating physicians; (2) the ALJ erred by failing to find

that White had a significant mental impairment despite clear evidence otherwise; (3) the ALJ did not

have substantial evidence to support the finding that White could have performed a limited range

of light work; (4) the ALJ erred by failing to follow the vocational expert's testimony in response

to hypothetical questions that accurately portrayed White's impairments; and (5) the district court

erred by failing to adopt the Report and Recommendation of the magistrate judge. For the reasons

discussed below, we **REVERSE** the judgment of the district court upholding the Commissioner's

decision and **REMAND** with instructions to return the claim to the Commissioner for further

proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Before claiming disability in 2003, White consistently had been employed as an electrician

since 1986, and previously had worked as a die cast operator since 1976. Since 1997, White has

suffered from pain in his right thigh due to "meralgia paresthetica caused by entrapment of the lateral

femoral cutaneous nerve." Administrative Record ("A.R.") at 144 (EMG/NCT Study 9/2/97). White

began seeing a pain specialist, Dr. Thomas Basch, who started administering nerve blocks to White

in 2001. In May 2002, Dr. Basch noted that the nerve blocks "help [White] for a month or two but

then the pain returns" and that White's "job as an electrician is getting harder and harder because of

the pain." A.R. at 235 (Basch Pain Care Report 5/3/2002). Later in 2002, White underwent a

cryoablation procedure, but the procedure and recovery were severely painful, and afforded him only

one week of relief.

In January 2003, White reported to Dr. Basch that his leg remained "numb and painful," and

Dr. Basch noted that nerve blocks have "been a hit or miss proposition" and that surgical

intervention may be appropriate. A.R. at 236 (Basch Pain Care Report 1/21/2003). The surgeon

with whom White consulted, however, recommended against surgery. White also tried physical

therapy with no success, and Dr. Basch was hesitant to prescribe stronger pain medication because

the side effects would interfere with White's job as an electrician. Dr. Basch eventually noted that

White may have to apply for disability. White continued with the nerve blocks, but also noted that

2

his pain was worsening and that the injections only gave temporary relief. On May 7, 2003, Dr. Basch noted,

> At this point I simply don't have much else to offer [White]. He is seriously considering applying for disability and I think the time has come to do this. The work he does as an electrician involves sitting, squatting, twisting and simply places pressure and torsion across this branch of the inguinal nerve. In the patients I have seen with this problem, it seems like we've either been able to "hit a home run" or have been unable to treat it well at all and unfortunately [White] is falling into the latter category.

A.R. at 230 (Basch Pain Care Report 5/7/2003). Dr. Basch subsequently "took [White] off work." A.R. at 229 (Basch Office Notes 9/15/2003). Dr. Basch noted that White would be helped by walking more, but found that when White did increase his walking as instructed, the pain became unbearable. White continued to receive injections, but the relief lasted only between three to seven weeks. In July 2004, White's primary care physician, Dr. Mervyn Smith, also put White off work "indefinitely" due to his "[right] leg nerve damage." A.R. at 242 (Disability Certificate). In April 2005, Dr. Basch noted that White "did quite well" with the most recent nerve block but also noted that "as he becomes more active with the improving weather, there are times that his groin pain and anterior thigh pain really flares" and that "there are, unfortunately, no cures for this sort of condition." A.R. at 250 (Basch Office Notes 4/26/2005).

During this time, White also was treated for depression, both by Dr. Basch and by a counseling psychologist, Dr. McDowell. White began seeing Dr. McDowell in May 2003, and she diagnosed him with adjustment disorder and depression, finding that he had a global assessment of functioning ("GAF") score of 55, indicating moderate symptoms. White began seeing Dr. McDowell frequently, three times a month, but by June 2005 he was going for counseling only every two or three months. Dr. Basch also was treating White for depression and prescribed anti-

3

depressant medication upon finding that White "is becoming depressed and discouraged. His wife concurs. . . . The chronic pain plus what appears to be an impending disability is weighing heavily upon him." A.R. at 229 (Basch Office Notes 9/15/2003). At a later visit, Dr. Basch increased the dosage because White "feels overwhelmingly depressed because of the combination of the chronic pain and inability to sleep because of pain." A.R. at 252 (Basch Office Notes 1/21/2005).

On June 16, 2003, White applied for disability insurance benefits under 42 U.S.C. §§ 416(i) and 423, alleging that he became disabled on May 7, 2003. A state agency physician, who did not examine White, completed a residual functional capacity ("RFC") assessment, and found that White was not disabled. The physician noted that this conclusion differed from the those of White's treating physicians because their statements were not supported by the evidence and findings, but elaborated no further. The state agency denied his claim in December 2003.

## B. Administrative Hearing

After the state agency denied his claim, White requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on May 12, 2005. At the hearing, the ALJ heard testimony from White and from a vocational expert.

Regarding his daily activities, White testified that he drove very little because of his pain and the effect of his pain medications, that he supervised his sons in doing yard work because he could no longer do it himself, and that he could no longer help his children get ready in the morning or help them with their homework. He testified that he experienced fatigue and forgetfulness with his medication, which caused him to take frequent naps, and prevented him from being able to play card games. Regarding his physical capacities, he testified that he can sit for only about thirty minutes without medication, but when he takes medication his head is not clear. He could stand in one place

4

for only ten to fifteen minutes, both because of the pain and because of dizziness from the medication. He also testified that he could walk perhaps a block without his medication. White noted that Dr. Basch had planned to write him a prescription for a cane, but White had already obtained one. With regard to the nerve blocks, White testified that they give him two or three weeks of relief but also leave his leg swollen. He also noted that he still has pain and must take medication even after the nerve blocks.

The ALJ then questioned a vocational expert. The ALJ posed three hypothetical questions to the vocational expert. The third question, upon which the ALJ relied in his decision, asked the vocational expert

> to assume an individual the same age as the claimant, same educational background and with the journeyman's card and same past work you described. This person is limited to doing light exertional work with occasional postural movement, and occasional pushing and pulling with the right lower extremity and also needing to alternate sitting and standing at will, so I'll call that a sit/stand at will option.

A.R. at 315-16 (Hr'g Tr. at 46-47). In response, the vocational expert stated that jobs with these restrictions included "[i]nspector, tester, sorter, stamper, weigher," "cashier," and "ticket sales," and that the number of jobs in each that would accommodate a sit/stand option were 4500, 16,000, and 3000, respectively. A.R. at 316 (Hr'g Tr. at 47). The expert later agreed, however, that all of these jobs would be eliminated if the person dozes off during the day or has mental confusion and forgetfulness.

## C. ALJ Decision

On December 18, 2005, the ALJ issued a decision finding that White was not disabled. The ALJ reviewed White's claim under the five-step analysis set forth in 20 C.F.R. § 404.1520. Although the ALJ found that White's "neuropathic pain in the right thigh from lateral femoral

5

cutaneous nerve entrapment" was a severe impairment, A.R. at 18 (ALJ Decision at 5), and prevented White from doing his past relevant work, the ALJ found that White was not disabled because he was capable of performing other work that exists in significant numbers in the national economy.

The ALJ decided not to "give great weight to the opinions of Dr. Basch and Dr. Smith regarding the claimant's ability to perform work-related activities because those opinions take into consideration only the claimant's past work which was at the medium and heavy exertional level; and not 'other work.'" A.R. at 17-18 (ALJ Decision at 4-5). The ALJ further discounted Dr. Basch's opinion because it "is inconsistent with his own office notes that indicate the claimant receives good pain relief for four to seven weeks from nerve block injections." A.R. at 18 (ALJ Decision at 5). The ALJ went on to find that White's "neuropathic pain in the right thigh from lateral femoral cutaneous nerve entrapment" is a "severe" impairment, but found that his other impairments, including his mental impairment, were not "severe." *Id*. In discussing the mental impairment, the ALJ found that White was diagnosed with "adjustment disorder" by Dr. McDowell but takes anti-depressants "more for pain relief and sleep than for depressive symptoms," "does not participate in mental health counseling on a consistent basis and has only mild to no limitations in his activities of daily living, social functioning and concentration, persistence and pace due to a mental health impairment." *Id*.

The ALJ went on to determine White's RFC, defined as "the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks." *Id*. The ALJ discussed some of White's testimony about the activities he performs, noting that White "was teaching his son how to do yard work, drove, used a computer,

6

went to the store with his family, and handled the family finances." A.R. at 19 (ALJ Decision at 6). He also noted White's testimony "that he experienced fatigue and forgetfulness from his medications but still drove a vehicle" and that, despite White's testimony that he went to counseling once a month, "[t]he records clearly show that the claimant does not see his counselor once a month." *Id*. After discussing White's testimony that he was "limited to sitting thirty minutes, standing fifteen minutes with a cane, walking one block with a cane, and lifting a gallon of milk," the ALJ found "no evidence in the record that the claimant was prescribed a cane or has any difficulty walking." *Id*. Because of these apparent inconsistencies, the ALJ found that "[t]he claimant's description of his limitations exceeds medical substantiation, is not consistent with other evidence and is not credible." *Id*. Accordingly, the ALJ found that White "retains the following residual functional capacity: light work with a sit/stand option; occasional pushing and pulling with [right lower extremity]; and occasional bending, kneeling, squatting, crouching, and crawling." *Id*. The ALJ found that this RFC prevented White from performing his past relevant work as an electrician.

Because the ALJ found that the RFC included "additional exertional and/or non-exertional limitations," the ALJ looked to the hypothetical questions posed to the vocational expert to determine whether there were a significant number of jobs in the national economy that White could perform given his RFC, age, education, and past work experience. A.R. at 20 (ALJ Decision at 7). Because the vocational expert testified that there were 23,500 jobs in the region for someone of this RFC and other vocational factors, the ALJ concluded that there were a significant number of other jobs available to White, and that he was therefore not disabled. White timely filed an appeal to the Social Security Administration Appeals Council, but the Appeals Council denied White's request for review.

**D. District Court Proceedings**

On November 6, 2006, White filed a civil action for judicial review of the Commissioner's decision, and the magistrate judge issued a report and recommendation on January 17, 2008. The magistrate judge concluded that the ALJ's decision, specifically the determination of White's RFC, was not supported by substantial evidence. First, the magistrate judge concluded that, while it was appropriate for the ALJ to discount Dr. Basch's opinion that White was disabled, the ALJ should not have ignored Dr. Basch's medical conclusion that White's impairment is exacerbated by sitting, squatting, and twisting, because that conclusion was not contradicted by any evidence in the record. Next, the magistrate judge concluded that the ALJ should have taken into consideration White's testimony that his medications adversely affected his ability to perform work. The magistrate judge further concluded that, because White's testimony regarding his limitations was consistent with objective medical evidence and because White's credibility was bolstered by his extensive work history, the ALJ's decision was not supported by substantial evidence to the extent White "testified that he was impaired to an extent beyond that recognized by the ALJ." Report & Recommendation at 10-11. For these reasons, "the hypothetical questions, the response to which the ALJ relied upon to support his decision, [were] based upon an improper RFC determination." *Id*. at 11.

Although the magistrate judge concluded that the ALJ's determination "that there exists a significant number of jobs which Plaintiff can perform despite his limitations, is supported by less than substantial evidence," *id*. at 11, the magistrate judge did not find that there existed compelling evidence that White is disabled such that the court could award benefits. The magistrate judge therefore recommended that the Commissioner's decision be reversed and the case be remanded for further factual findings. *Id* at 12.

The Commissioner filed objections to the Report and Recommendation, to which White responded. On February 29, 2008, the district court entered a judgment granting the Commissioner's objections, rejecting the Report and Recommendation, and affirming the decision of the Social Security Administration. The district court concluded that the ALJ's decision was supported by substantial evidence because (1) Dr. Basch's opinion that White's impairment was exacerbated by certain activities was contradicted by Dr. Basch's own findings that White's pain was controlled by nerve block injections and by the state agency physician's findings and (2) substantial evidence "supports the ALJ's discounting of Plaintiff's self-diagnoses since Plaintiff drives a vehicle, goes shopping, walks frequently, handles the family finances, and carries out other daily activities." Dist. Ct. J. at 3. Ultimately, the district court concluded that "although it may disagree with the ALJ's determination, the ALJ has acted within his 'zone of choice.'" *Id*.

## II. ANALYSIS

### A. Standard of Review

"This court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 237-38 (6th Cir. 2002) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

A social security disability determination is made in accordance with the five-step sequential analysis set forth in 20 C.F.R. § 404.1520:

First, [White] must demonstrate that [he] is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, [White] must show that [he] suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if [White] is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, [he] will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and [White] has a severe impairment, the Commissioner will then review [White's] residual functional capacity (RFC) and relevant past work to determine if [he] can do past work; if so, [he] is not disabled. 20 C.F.R. § 404.1520(e).

*Howard*, 276 F.3d at 238. In White's case,

The ALJ determined that the first four parts did not entitle [White] to disability benefits, so this case turns on the fifth: if [White's] impairment prevents [him] from doing past work, the Commissioner will consider [his] RFC, age, education and past work experience to determine if [he] can perform other work. If [he] cannot perform other work, the Commissioner will find [him] disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

To meet the burden of showing that [White] could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [White] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [White's] individual physical and mental impairments.'" *Id.* (citations omitted).

*Id.* After considering White's age, education, past relevant work experience, and RFC, along with the testimony of the vocational expert, the ALJ determined that White was able to perform other work and was not disabled. White argues that this determination is not supported by substantial evidence.

10

**B. Whether the ALJ's Decision Is Supported by Substantial Evidence**

White argues that the ALJ's decision was not supported by substantial evidence for three reasons. First, White argues that the ALJ did not properly consider the opinions of White's treating physicians, Dr. Basch and Dr. Smith. Second, White argues that the ALJ erred by not finding that White had a significant mental impairment. Finally, White argues that substantial evidence does not support the finding that White could have performed a limited range of light work and that the ALJ failed to follow the vocational expert's responses to the hypothetical questions that accurately portrayed White's physical and mental state. We first discuss whether the ALJ's RFC determination that White could perform a limited range of light work was supported by substantial evidence and then discuss whether the vocational expert's testimony in response to the ALJ's hypothetical question provides substantial evidence to support the ALJ's finding that White could perform other work. We conclude that both the ALJ's RFC determination and the ALJ's finding of other work were not supported by substantial evidence.

**1. RFC Determination**

A claimant's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims). The ALJ found that White "retains the following residual functional capacity: light work with a sit/stand option; occasional pushing and pulling with [right lower extremity]; and occasional bending, kneeling, squatting, crouching, and crawling." A.R. at 19 (ALJ Decision at 6). White argues that the ALJ erred in making this finding by not properly

11

considering the opinions of White's treating physicians, by not considering White's significant mental impairment, and by not crediting White's testimony, particularly on the effects of his pain and his pain medication.

### a. Treating Physicians' Opinions

Under the "treating source" rule, the ALJ must "'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Pursuant to this rule, "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,' then it will be accorded controlling weight." *Rogers*, 486 F.3d at 242 (quoting *Wilson*, 378 F.3d at 544). "When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id*. "However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Id*. "It is true, however, that the ultimate decision of disability rests with the administrative law judge." *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). White argues that, because his treating physicians, Dr. Basch and Dr. Smith, advised him not to return to work, the ALJ erred by discounting their opinions regarding White's disability when there was nothing in the record, except the state agency physician's report, that supported a conclusion that White could perform limited light work. The Commissioner argues

that a treating physician's opinion that a claimant cannot return to work is not conclusive on the ultimate issue of disability and that the ALJ gave the requisite "good reasons" for discounting the opinions of the treating physicians.

We conclude that the ALJ did not give sufficient reasons for discounting the opinion of Dr. Basch as to White's limitations. Although the ALJ was correct that the opinions of Dr. Basch and Dr. Smith were not conclusive on disability, particularly because they referred to White's ability to perform his current job rather than other jobs, the ALJ does not give good reasons for entirely discounting the remainder of Dr. Basch's opinions. The ALJ stated that he did not give Dr. Basch's opinion great weight "because his opinion is inconsistent with his own office notes that indicate the claimant receives good pain relief for four to seven weeks from nerve block injections." A.R. at 18 (ALJ Decision at 5). However, although Dr. Basch did find that White obtained temporary relief from the nerve blocks, the key is that this relief was temporary, lasting for only three to seven weeks. Dr. Basch's notes repeatedly state that, aside from the temporary relief from the injections, no viable treatments are working and there is nothing more that can be done to relieve White's pain. This is in no way inconsistent with the conclusion that White's pain would prevent him from consistently holding a job and therefore is not a good reason for entirely discounting Dr. Basch's opinion as internally inconsistent. As we have previously stated, a doctor's report is not inconsistent with a finding of disability merely because it states that the claimant's physical impairment has improved. *Walker*, 980 F.2d at 1071.

As the magistrate judge noted, Dr. Basch found that White could not perform work involving sitting, squatting, or twisting, because it places too much pressure on his nerve. This is inconsistent with the RFC, which allows for occasional pushing and pulling with the right leg and occasional

13

bending, kneeling, squatting, crouching, and crawling. Although, as the district court noted, Dr. Basch found that White should walk more, he also found that when White did walk more as instructed, the pain became unbearable. The ALJ stated that Dr. Basch's recent office notes reported that White was becoming more active, but the ALJ failed to note that in that same sentence Dr. Basch reported that the increased activity was increasing White's pain. As we have noted, "the fact that a patient is encouraged to remain active does not reflect the manner in which such activities may aggravate the patient's symptoms." *Rogers*, 486 F.3d at 249.

### b. Significant Mental Impairment

White also argues that the ALJ erred by failing to find that White had a significant mental impairment even though Dr. McDowell diagnosed White with adjustment disorder and depression, giving him a GAF of score of 55, indicating moderate symptoms. In discussing White's mental impairment, the ALJ found that it was not severe because, although he was diagnosed with "adjustment disorder" and was prescribed an anti-depressant medication, the anti-depressant was "more for pain relief and sleep than for depressive symptoms," and White "does not participate in mental health counseling on a consistent basis and has only mild to no limitations in his activities . . . due to a mental health impairment." A.R. at 18 (ALJ Decision at 5).

Although the ALJ did not err in finding that White's mental impairment was not severe, the ALJ gave no explanation for totally discounting the objective evidence of White's mental impairment in determining White's RFC. Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe. *See* 20 C.F.R. §§ 404.1523, 404.1545(a)(2). The Commissioner correctly states that Dr. McDowell did not note any limitations caused by White's mental impairment and that the ALJ was therefore not

14

required to include the GAF finding in the RFC. *Howard*, 276 F.3d at 241. The ALJ's total discounting of White's mental impairments, however, is not supported by substantial evidence, because the ALJ mischaracterizes the evidence and misstates Dr. Basch's reasons for prescribing anti-depressants. When first prescribing them, Dr. Basch stated "[White] is becoming depressed and discouraged. His wife concurs. . . . The chronic pain plus what appears to be an impending disability is weighing heavily upon him." A.R. at 229 (Basch Office Notes 9/15/2003). At a later visit, Dr. Basch increased the dosage because White "feels overwhelmingly depressed because of the combination of the chronic pain and inability to sleep because of pain." A.R. at 252 (Basch Office Notes 1/21/2005). Contrary to the ALJ's statement, the anti-depressants were not prescribed for "pain relief and sleep," A.R. at 18 (ALJ Decision at 5), but because the pain and lack of sleep were causing depression. Because the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence.

### c. White's Credibility

White argues that substantial evidence does not support the ALJ's discounting of White's testimony about his impairments. We recently discussed the two-part analysis "used in evaluating complaints of disabling pain":

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id*. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve

symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.*

*Rogers*, 486 F.3d at 247; *see also* 20 C.F.R. § 404.1529(a). Although it is "for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant," "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements)). In *Rogers*, the claimant asserted disability based on pain caused by fibromyalgia, and we reversed and remanded the ALJ's decision, in part because the ALJ failed to evaluate properly the claimant's credibility by over-emphasizing objective findings, mischaracterizing the scope of the claimant's daily activities, and placing unwarranted significance on a physician's testimony that the best treatment was regular exercise. *Id*. at 248-49.

Here, the ALJ found that White's "description of his limitations exceeds medical substantiation, is not consistent with other evidence and is not credible." A.R. at 19 (ALJ Decision at 6). The ALJ stated that he "considered all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 404.1529, and Social Security Ruling 96-7p" and relevant medical opinions, *id*., but he did not explain how the objective evidence was inconsistent with White's testimony. He seems to have based this finding on the fact that White testified that "[h]e is able to drive, handle the family finances, help care for six children, and use a computer" and that he "was teaching his son how to do yard work." *Id*. But this "mischaracterizes

16

[White's] testimony regarding the scope of [his] daily activities [and] fails to examine the physical effects coextensive with their performance." *Rogers*, 486 F.3d at 248-49. White testified, for example, that he drove very little because of pain and his medications, that he was supervising his sons in doing yard work because he could no longer do it himself, and that he could no longer help his children get ready in the morning or help with their homework. White's subjective complaints are consistent with this testimony and with the activities questionnaires he completed as part of his application. Further, White's extensive work history and attempts to continue working despite his disability support his credibility, a factor not even considered by the ALJ. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("[A] good work history may be deemed probative of credibility . . . ."); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *5.

Much of White's testimony would affect his RFC determination. For example, White testified that he experienced fatigue and forgetfulness with his medication. The ALJ also found no evidence that White had trouble walking because he had not been prescribed a cane, but White testified that he already had obtained one without a prescription. As in *Rogers*, we conclude that the ALJ's decision "fails to 'contain specific reasons for the finding on credibility, supported by the evidence in the case record'" and is not "'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [White's] statements and the reasons for that weight.'" *Rogers*, 486 F.3d at 248-49 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

17

## 2. Vocational Expert Testimony

White argues that, because the ALJ did not have substantial evidence to support the finding that White could perform limited light work, the hypothetical question posed to the vocational expert was inaccurate, and the ALJ should not have relied on the answer in finding that there were other jobs that White could perform. White argues that later hypothetical questions asked of the vocational expert by White's attorney accurately portrayed White's limitations. The ALJ posed three hypothetical questions to the vocational expert and relied on the answer to the third question in determining that White could perform other work. That question asked the vocational expert

> to assume an individual the same age as the claimant, same educational background and with the journeyman's card and same past work you described. This person is limited to doing light exertional work with occasional postural movement, and occasional pushing and pulling with the right lower extremity and also needing to alternate sitting and standing at will, so I'll call that a sit/stand at will option.

A.R. at 315-16 (Hr'g Tr. at 46-47). Because the hypothetical question simply restates the RFC, and because, as discussed above, the RFC does not accurately portray White's limitations, the hypothetical question suffers from the same problems as the RFC, and thus the ALJ erred in relying on the answer to this question.

Moreover, we have explained that the purpose of a hypothetical question is different than that of an RFC: "while the RFC should focus on [White's] abilities or, in other words, what [White] can and cannot do, the hypothetical question should focus on [White's] overall state including [White's] mental and physical maladies." *Howard*, 276 F.3d at 239. The "RFC is to be an 'assessment of [White's] remaining capacity for work' once [his] limitations have been taken into account.'" *Id*. (quoting 20 C.F.R. § 416.945). In other words, the RFC "is an assessment of what [White] can and cannot do, not what [he] does and does not suffer from." *Id*. "The hypothetical question posed to

18

a [vocational expert] for purposes of determining whether [White] can perform other work, on the other hand, should be a more complete assessment of [his] physical and mental state and should include an 'accurate[ ] portray[al] [of his] individual physical and mental impairment[s].'" *Id.* (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975)). In *Howard*, we found that the vocational expert's testimony was not sufficient evidence to support the ALJ's finding that the claimant could perform "other work," because the question did not include the ALJ's findings on the claimant's physical ailments and diagnoses and because the question did not accurately portray the claimant's mental state. 276 F.3d at 241.

Here, the ALJ's reliance on the answer to the hypothetical question is further flawed to the extent that it did not accurately portray White's physical and mental impairments. Specifically, the question made no mention of White's mental state. Dr. McDowell, White's treating psychologist, diagnosed him with adjustment disorder and depression and gave him a GAF score of 55, which indicates moderate symptoms or moderate difficulties in social, occupational, or school functioning. As discussed above, the ALJ did not have to include this finding in the RFC. *Howard*, 276 F.3d at 241. However, *Howard* does direct the ALJ to include the diagnosis of mental impairment in the hypothetical question.

Further, the question did not account for the side effects of the pain medication. When questioned by White's attorney, the vocational expert admitted that the listed jobs would be eliminated if the person dozes off during the day or has mental confusion and forgetfulness. The Commissioner argues that these symptoms correctly were not included in the question because the ALJ found that White's testimony was not credible. As discussed above, there was not substantial

19

evidence to discount White's testimony that the pain medication left him drowsy and fatigued. White has been on several potent pain medications, including Valium, Vicodin, and a Duragesic patch, which are known to have powerful side effects such as drowsiness, fatigue, light-headedness, and weakness. Further, Dr. Basch's office notes indicate that, far from abusing these medications, White was concerned about the side effects and at times asked to have his dosage decreased. The ALJ's determination is thus not entitled to substantial weight to the extent that it discounted the side effects of White's medications.

## C. Award of Benefits

"If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Otherwise, the court should remand to the Commissioner for further consideration. Although the ALJ did not provide substantial evidence to support his conclusions, we cannot say that there is compelling evidence that White is entitled to benefits. We therefore must remand for further consideration.

## III. CONCLUSION

Because we conclude that the ALJ's determination that White is able to perform a substantial number of other jobs was not supported by substantial evidence and did not conform to the proper legal standards, we **REVERSE** the judgment of the district court upholding the Commissioner's decision and **REMAND** with instructions to return the claim to the Commissioner for further proceedings consistent with this opinion.