**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DEBORAH CAINGLIT,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee.

No. 03-7004
(D.C. No. 01-CV-506-S)
(E.D. Okla.)

ORDER AND JUDGMENT  *

Before **HARTZ**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Deborah Cainglit appeals the district court's order affirming the decision of the Commissioner of Social Security to deny her application for disability and supplemental security income benefits. Because the Commissioner's decision is supported by substantial evidence and no legal errors occurred, we affirm.

Ms. Cainglit applied for benefits in 1998, alleging an inability to work since August 4, 1997, due to breathing problems, back and leg pain, and other impairments that she characterized as "female problems." Aplt. App. at 74. Following a hearing before an administrative law judge (ALJ), the ALJ determined that Ms. Cainglit was not disabled at step four of the five-step sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), because she had the residual functional capacity (RFC) to return to her past relevant work as a "house (residence) supervisor." Aplt. App. at 33. The ALJ also determined, in the alternative at step five, that she had the RFC to perform other work of a sedentary nature. *Id*.

We review the Commissioner's decision to determine only whether it is supported by substantial evidence and whether legal errors occurred. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks

omitted). This court may "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

**I. Step Two Analysis of Depression**.

On appeal Ms. Cainglit first contends that the ALJ failed in his step two analysis when he concluded that her depression was not a "severe" impairment. At step two the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is considered "not severe" if it does not significantly limit a claimant's physical and mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," and include the ability to understand, remember, and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

Ms. Cainglit contends that the ALJ ignored her testimony that she felt she was disabled in part due to her depression and ignored medical records indicating that she has been diagnosed with major depression. The determination at step two is based on medical factors alone. *Williams*, 844 F.2d at 750. Claimants "must

-3-

show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

The claimant bears the burden at step two to present evidence that she has a medically severe impairment or combination of impairments, and, to meet that burden, must furnish medical and other evidence in support of her claim. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987). The ALJ discussed at length the evidence in the record relating to Ms. Cainglit's depression, and ultimately concluded that the evidence did not establish that her depression had a significant effect on her ability to work. Aplt. App. at 28-29. The ALJ's finding is supported by substantial evidence.

There is evidence in the record that Ms. Cainglit has a history of depression and anxiety, for which she received treatment at Mental Health Services of Southern Oklahoma (MHSSO). Aplt. App. at 169, 176, 211, 212-26, 231. As the ALJ concluded, however, this evidence does not demonstrate that this impairment significantly limits Ms. Cainglit's physical or mental ability to do basic work activities. The counselors at MHSSO reported that her depression did not impair her intellectual functioning, noting specifically no impairment of her level of consciousness, attention span, abstract thinking, calculation ability, or intelligence. *Id*. at 213-15. The counselors noted either no impairment or only slight or occasional impairment of Ms. Cainglit's ability to manage her daily

-4-

living activities or to make reasonable life decisions. *Id*. The counselors noted no impairment of her memory or her stream of thought, and reported that she did not suffer from any phobias, depersonalizations, homicidal ideation, delusions, or ideas of reference or of influence, and suffered from only slight or occasional compulsions, obsessions or suicidal ideations, except that one of these reports stated that her obsessions were marked or repeated. *Id*. She was not markedly or repeatedly domineering, submissive, provocative, suspicious, overly compliant, or uncooperative with her counselors. *Id*. The counselors described her predominant affect or mood as slight or marked fear or anxiety and slight or marked depression. *Id*. There were some reports of marked or repeated problems with posture, facial expression, bodily movements, and loud speech, and one of these reports noted she was markedly or repeatedly unkempt. But in Ms. Cainglit's MHSSO's case management plan, it was reported that she had a good work history and was able to live independently. *Id*. at 218. The counselors' evaluations thus are consistent with the ALJ's determination that Ms. Cainglit's depression did not interfere with her ability to understand, remember, and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting.

There is one unsigned document in the MHSSO records stating, in relevant part, that Ms. Cainglit is in a depressed mood all the time, has no motivation or energy, struggles with suicidal thoughts, has impaired judgment, places herself in dangerous situations, and has very poor coping skills. Aplt. App. at 221. Unlike the other more detailed MHSSO examination reports, this document does not indicate the severity of these symptoms, or the degree of restriction caused by these symptoms. This document also states that Ms. Cainglit has demonstrated the ability to work and meet role expectations in the past. We conclude, therefore, that this document, standing alone, is insufficient evidence to require a conclusion that Ms. Cainglit's depression significantly interferes with her ability to perform basic work activities.

A state agency medical consultant, Dr. Stephen Miller, characterized Ms. Cainglit's mental impairments of affective disorder (depression) and substance addiction as "[n]ot [s]evere." *Id*. at 199. Dr. Miller found that Ms. Cainglit did have depression characterized by appetite disturbance, sleep disturbance, and decreased energy, but that her depression caused only slight restrictions in her daily living activities or social functioning and seldom caused difficulties in her concentration, persistence, or pace, and that she only once or twice had episodes of deterioration or decompensation in work or work-like

settings.  *Id*. at 202, 206.  All these findings indicate that a mental impairment is not severe.  *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ ordered a consultative mental examination, which was performed by Dr. Gerald Ball.  Aplt. App. at 195-97.  He also diagnosed Ms. Cainglit with major depression of moderate severity and amphetamine withdrawal, *id*. at 197, and noted that she cried during the examination, *id*. at 196.  He also reported, however, that she was oriented as to time, place, and person, that there was no evidence of any thought disorder, *id*. at 195, that her short-term memory and mental control were intact and her long-term memory was adequate, that she could read and follow written directions, that she could fill out job applications, and that she would be able to manage any benefits without assistance, *id.* at 197.  This evidence is consistent with the ALJ's determination that Ms. Cainglit's depression would not significantly interfere with her ability to do basic work activities.

Ms. Cainglit notes that Dr. Ball reported claimant's Global Assessment of Functioning (GAF) score as 45, *id*. at 197, and that the counselors at MHSSO reported her GAF score as 39, *id*. at 217, and argues that these scores demonstrate that her depression is a severe impairment.  The GAF scale is used by clinicians to report an individual's overall level of functioning.  *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision

4th ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning," while a GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Id*. at 34. A GAF score of 39-45 thus may indicate problems that do not necessarily relate to one's ability to work. *See id*. In this case neither Dr. Ball nor the MHSSO counselors stated that Ms. Cainglit's depression would interfere with her ability to work. Aplt. App. at 196-97, 212-26. Rather, they noted problems with her family and social relationships. *Id*. at 216. In the absence of any evidence indicating that Dr. Ball or the MHSSO assigned these GAF scores because they perceived an impairment in Ms. Cainglit's ability to work, the scores, standing alone, do not establish an impairment seriously interfering with Ms. Cainglit's ability to perform basic work activities. *Cf. Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

In sum, the ALJ's determination that Ms. Cainglit's depression did not significantly limit her physical and mental ability to do basic work activities, and therefore that her depression was not a "severe" mental impairment at step two, is supported by substantial evidence.

**II. Weight Given to Treating Physician; Development of the Record** .

Ms. Cainglit's next two arguments are related. First, she contends that the ALJ failed to consider properly the report of her treating physician, Dr. Woods, and, second, that in considering Dr. Woods' records, the ALJ failed to develop the record fully. Dr. Woods' records consist of two pages of treatment notes from March, April and May of 1999, Aplt. App. at 211, 230, a two-page analysis of Ms. Cainglit's RFC in September 1999, *id*. at 228-29, and a one-paragraph letter dated May 21, 1999, from Dr. Woods, stating her opinion that Ms. Cainglit was totally and permanently disabled, *id*. at 231.

An ALJ is required to give controlling weight to a treating physician's opinion only if "it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Castellano* , 26 F.3d at 1029; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). When an ALJ decides that a treating source's opinion is not entitled to controlling weight, he must determine the weight it should be given after considering

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

Ms. Cainglit acknowledges that the ALJ did not explicitly reject Dr. Woods' opinion. Appellant's Br. at 14. Rather, the ALJ properly set forth specific, legitimate explanations for disregarding certain limited aspects of Dr. Woods' RFC assessment and correctly observed that Dr. Woods' opinion that Ms. Cainglit was disabled was not supported by clinical and laboratory diagnostic techniques. Dr. Woods' RFC assessment of Ms. Cainglit's exertional abilities is consistent with the ALJ's assessment of her exertional abilities, and is not inconsistent with the ALJ's determination that Ms. Cainglit had the physical strength to perform sedentary work. *Compare* Aplt. App. at 28, *with id*. at 228-29; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a) (describing exertional requirements of sedentary work). There were only slight differences in the two RFC assessments, for which the ALJ provided specific and legitimate explanations that are supported by the record. For example, Dr. Woods found that Ms. Cainglit had a non-exertional limitation of needing to avoid exposure to dust, fumes, and humidity. *Id*. at 229. The ALJ differed from Dr. Woods merely in his determination that Ms. Cainglit needed only to be restricted from *excessive* exposure to these irritants, and supported this conclusion with the evidence that Ms. Cainglit continued to smoke and that Dr. Woods' treatment notes do not

reflect any acute breathing difficulties and did not suggest further evaluation, such as a pulmonary function study.    *Id*. at 27-28.

In discussing Dr. Woods' treatment of Ms. Cainglit, the ALJ noted that Dr. Woods had prescribed a medication for her that would not likely be prescribed for persons with a respiratory disease.    *Id*. at 27.  Ms. Cainglit asserts that the ALJ was impermissibly substituting his lay opinion for medical opinion. *See Sisco v. United States Dep't of Health & Human Servs.*    , 10 F.3d 739, 744 (10th Cir. 1993) (holding ALJ erred in rejecting unrebutted medical diagnosis of chronic fatigue syndrome based on lack of conclusive laboratory tests when there were no such "dipstick" tests available for chronic fatigue syndrome).  We disagree.  The ALJ was evaluating Dr. Woods' opinion based upon a variety of factors, and was not rejecting or discounting Dr. Woods' opinion based upon this single observation.    *See* Aplt. App. at 27-28.

The ALJ did disagree with Dr. Woods' conclusion that Ms. Cainglit is totally disabled.  The ALJ did not err in doing so.  An opinion by a treating physician that a claimant is "disabled" or "unable to work" has no special significance because it is not a medical opinion.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  These determinations are legal conclusions that are "reserved to the Commissioner."    *Id.  See also Castellano*    , 26 F.3d at 1029 (holding that "responsibility for determining the ultimate issue of disability is reserved to the

[Commissioner]"). As the ALJ noted, Dr. Woods' disability opinion was not supported by specific findings or any objective clinical or laboratory diagnostic findings, and Dr. Woods' treatment notes do not support the severity of impairments she described in her disability opinion letter. *See* Aplt. App. at 27-28.

In a related argument, Ms. Cainglit contends that the ALJ failed to develop the record in two instances; first, when he noted the incongruity between Dr. Woods' statement that she had treated Ms. Cainglit since August 1998 and the absence of any treatment notes from Dr. Woods prior to March 1999, and second, when he noted that Dr. Woods had never ordered any pulmonary function tests to assess the severity of Ms. Cainglit's breathing problems. Ms. Cainglit contends that the ALJ should have made an attempt to obtain either the missing records or an explanation for their absence and should have ordered pulmonary function tests.

As noted above, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. *Yuckert* , 482 U.S. at 146. A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States*

-12-

*Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993).

Generally, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). Where the medical evidence in the record is inconclusive, "a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997); *see also* 20 C.F.R. §§ 404.1512(f), 416.912(f).

Nevertheless, "[t]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored" and "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Ms. Cainglit's counsel was familiar with the record submitted to the ALJ. Counsel did not indicate or suggest to the ALJ that any medical records from Dr. Woods were missing, nor ask for the ALJ's assistance in obtaining any such records. On appeal, counsel has failed to identify the evidence that she claims the ALJ should have obtained. Given Ms. Cainglit's failure to provide the as-yet-unidentified records herself, to ask the Commissioner for assistance, or to show the relevance of any records she claims the ALJ should have obtained,

-13-

we conclude she has not demonstrated the ALJ violated his duty to develop the record.

Nor was the ALJ required to order a pulmonary function test. The ALJ did order two consulting examinations. Neither the treatment records nor the consulting examination relating to Ms. Cainglit's breathing problems indicate that further examinations were needed. The consulting physician stated that although Ms. Cainglit reported having asthma and breathing difficulties, he did not see that demonstrated in his examination. Aplt. App. at 189. He reported that Ms. Cainglit's chest and lungs were clear, that he heard no wheezes and no chest rales in her lungs whatsoever, that she had good breath sounds bilaterally, and that after he put her through all the exams, she was not short of breath. *Id*. at 188-89.

We conclude there was an adequate record by which the ALJ could decide this case. He had before him not only Dr. Woods' records but also the records of Ms. Cainglit's other physicians, as well as those of the consulting physicians. Further, we conclude the ALJ gave proper weight to Dr. Woods' opinions. *See Castellano,* 26 F.3d at 1029.

The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge