FILED
United States Court of Appeals
Tenth Circuit

December 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KENNETH DAVISON,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant - Appellee.

No. 14-1122
(D.C. No. 1:13-CV-00470-CMA)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

---

Kenneth Davison appeals from an order of the district court affirming the

Commissioner's decision denying his applications for disability benefits and

supplemental security income benefits under the Social Security Act. We exercise

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Davison worked as a furniture mover for six years when he was fired in August 2011. He was briefly hospitalized in September 2011, and again in March 2012, with psychotic symptoms after failing to take psychiatric medications. He recompensated quickly both times after taking his medications. He did not seek further mental health treatment. Mr. Davison applied for disability and supplemental security benefits in October 2011, alleging disability since August 2011 due to back problems, hand problems, and depression.

Mr. Davison's applications were denied initially, and he requested and received a de novo hearing before an administrative law judge (ALJ) in July 2012. The ALJ found Mr. Davison not disabled at step five of the controlling five-step sequential analysis. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five step process for evaluating claims for disability benefits). At step one, the ALJ confirmed that Mr. Davison had not worked since his alleged onset of disability, August 12, 2011. At step two, he found that Mr. Davison had the following severe impairments: schizoaffective disorder, bipolar disorder, borderline intellectual functioning, and personality disorder. But he concluded at step three that these impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpart P, App. 1.

At step four, the ALJ determined that Mr. Davison's impairments left him with a residual functional capacity (RFC) to perform a reduced range of unskilled medium

work, with certain restrictions.  Relying in part on associated inquiries to the vocational expert (VE) who testified at the hearing, the ALJ concluded that Mr. Davison could not perform his past relevant work (PRW) as a furniture mover. Proceeding to step five, the ALJ concluded that Mr. Davison is not disabled because there are jobs that exist in significant numbers in the national economy that he can perform.  The VE testified that these jobs include commercial cleaner, window cleaner, and floor waxer.

The Appeals Council denied Mr. Davison's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  Mr. Davison then sought judicial review of the Commissioner's decision, and the district court affirmed. Mr. Davison now appeals.

## II.  Discussion

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Id*. (citation omitted) (internal quotation marks omitted). "In reviewing the [Commissioner's] decision, we neither reweigh the evidence nor

substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted).

Mr. Davison raises three challenges to the Commissioner's decision: (1) the ALJ erred in concluding that Mr. Davison did not meet Listing 12.03; (2) the ALJ failed to develop the record regarding evidence of Mr. Davison's intellectual disability, illiteracy, and a somatic pain disorder; and (3) the ALJ's RFC assessment is not supported by substantial evidence.

## A. Listing 12.03

Mr. Davison first argues that the ALJ erred by failing to conclude that he met Listing 12.03 (schizophrenic, paranoid and other psychotic disorders).

"At step three, the [ALJ determines] . . . whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Lax*, 489 F.3d at 1085 (internal citations, quotation marks, and brackets omitted). A claimant will only be presumed disabled if an impairment, or a combination of impairments, meets or equals all the requirements of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). The burden is on the claimant to present evidence establishing that his impairments meet or equal listed impairments. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Listing 12.03 is "[c]haracterized by the onset of psychotic features with deterioration from a previous level of functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. In order for the ALJ to have found that Mr. Davison's mental limitation met the required level of severity under Listing 12.03, Mr. Davison had to satisfy requirements under 12.03(A) and (B), or alternatively, 12.03(C). *See id.* At issue is whether the ALJ erred in concluding that Mr. Davison failed to satisfy Paragraph B. Paragraph B requires that a medically documented condition specified in Paragraph A results "in at least two of the following: 1. marked restriction of activities of daily living; or 2. marked difficulties in maintaining social functioning; or 3. marked difficulties in maintaining concentration, persistence, or pace; or 4. repeated episodes of decompensation, each of extended duration." *Id.*

Relying on the record and the testimony of Dr. Buban, the impartial psychological expert, the ALJ determined that Mr. Davison did not satisfy the Paragraph B criteria. The ALJ found that Mr. Davison had mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate to marked difficulties with regard to concentration, persistence, or pace. The ALJ accepted Dr. Buban's testimony that Mr. Davison's concentration, persistence, or pace were markedly impaired when he experienced an acute psychosis, but that he had at most moderate limitations once he recompensated. The ALJ also only found two episodes of decompensation of extended duration. *See* Aplt. App., Vol. 1 at 17-18.

- 5 -

Mr. Davison suggests the ALJ erred in concluding that because Mr. Davison's psychotic symptoms "resolved temporarily when [he] received in-patient treatment," he did not meet the requirements of a listing. Aplt. Br. at 15. He argues that Paragraph A expressly provides that symptoms may be "either continuous or intermittent." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. Because Paragraph B criteria result from Paragraph A criteria, he claims the Paragraph B criteria may likewise be intermittent. But Mr. Davison's emphasis on the term "intermittent" is misguided. The import of the descriptive terms "continuous or intermittent" is to modify and provide temporal breadth to the preceding term, "medically documented *persistence*," found in Paragraph A. *See id.* (emphasis added). That is, the criteria in Paragraph A may persist over a continuous period or may persist over intermittent periods.

But at all times, to qualify as meeting the requirements of a listing, a claimant must establish that his impairment meets the twelve-month duration requirement. *See* 20 C.F.R. §§ 404.1525(c)(3), 404.1509. If Mr. Davison is suggesting otherwise, his construction of Listing 12.03 is untenable. And, ultimately, in any event, the medical evidence does not establish that Mr. Davison has two "marked" limitations. Indeed, the medical opinion evidence states that Mr. Davison did not meet the Paragraph B criteria.

But Mr. Davison also argues that the ALJ erred in determining that he had not established repeated episodes of decompensation because the ALJ only considered

those periods that resulted in involuntary commitment to a hospital.[1] He argues that episodes of decompensation can consist of periods of decreased function and do not require hospitalization. "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). They "may be inferred from medical records showing significant alteration in medication . . . or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)." *Id.* Although Mr. Davison is correct that he may establish episodes of decompensation with evidence other than hospitalization, he failed to do so. Outside of his two hospitalizations, he provided the ALJ with no other evidence of decompensation. Indeed, the record provided to the ALJ showed no medical treatment of Mr. Davison for his mental impairments after discharge.

Furthermore, the listings define the term "repeated episodes of decompensation, each of extended duration" as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* Even though neither of Mr. Davison's hospitalizations lasted two weeks, the ALJ determined

---

[1] It is unclear whether Mr. Davison's argument is directed towards establishing repeated episodes of decompensation to satisfy the Paragraph B criteria or the Paragraph C criteria. *See* Aplt. Br. at 15-16. Nevertheless, we conclude the argument fails.

Mr. Davison had established two episodes of decompensation. But Mr. Davison failed to establish, as required by the listing, a third episode of decompensation.[2]

Contrary to Mr. Davison's arguments, we conclude that substantial evidence supports the ALJ's determination that Mr. Davison did not meet the requirements of Listing 12.03.

## B.  Failure to Develop the Record

Mr. Davison next contends that the agency failed to adequately develop the record regarding evidence of his illiteracy, intellectual disability, and somatic pain disorder. These contentions are rejected.

"In a social security disability case, the claimant bears the burden to prove [his] disability." *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (internal quotation marks omitted). And "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised," even in a counseled case. *Id*. at 1062-63 (internal quotation marks omitted). But to trigger the ALJ's duty, the claimant must raise the issue to be developed and that issue must be substantial on its face. *Id*. at 1063. The claimant, therefore, "has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that

---

[2]    After the ALJ's decision, Mr. Davison submitted additional evidence to the Appeals Council showing that he presented to the emergency room department in August 2012 complaining of having auditory hallucinations. The evidence demonstrates that Mr. Davison was prescribed medication and released the same day. The Appeals Council considered the additional evidence, but concluded it did not provide a basis for changing the ALJ's decision.

a severe impairment exists." *Id.* (internal quotation marks omitted). In deciding how much evidence is sufficient, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

Mr. Davison did not allege these impairments in his application, disability report, or hearing testimony. Neither Mr. Davison nor his attorney brought these impairments to the ALJ's attention during the hearing. *See Wall*, 561 F.3d at 1063 (providing that normally an ALJ may reasonably rely on counsel to identify issues requiring further development). We conclude that there was insufficient evidence in the record to suggest a reasonable possibility that these impairments existed.

As to Mr. Davison's claim of illiteracy, there is some conflicting evidence concerning his ability to fill out certain forms. And while there is evidence that he had formal schooling through the twelfth grade, he testified that he took special education classes. Further, although Dr. Leidal, the psychological consultative examiner, found that Mr. Davison had borderline intellectual functioning, he made no mention that he was illiterate. As to the claim of an "intellectual disability,"[3] the ALJ acknowledged that Dr. Leidal diagnosed Mr. Davison with borderline intellectual functioning and included this limitation in the RFC. Regarding the

---

[3] If Mr. Davison is claiming that his "intellectual disability" represents a separate impairment from his claimed illiteracy, the evidence on which he relies is the same for both.

somatic pain disorder, the record does not reflect any evidence of a somatoform pain disorder. As Mr. Davison argues, he complained of pain in his hands and back, which the ALJ acknowledged. In his brief, Mr. Davison states that the absence of physical symptoms suggests a somatoform disorder. For the sake of argument, we may assume that Mr. Davison is correct. Even with this assumption, however, the ALJ developed the record by obtaining a psychological examination of Mr. Davison and live testimony by a psychologist. For example, at the ALJ's direction, a clinical psychologist and neuropsychologist examined Mr. Davison and submitted a detailed report, which contained no mention of any signs suggesting a somatoform disorder. In addition, the ALJ obtained testimony by a psychologist, Dr. Buban, who reviewed the record and identified the relevant listings for Mr. Davison's conditions. In doing so, Dr. Buban did not give any indication that Listing 12.07 (which addresses "Somatoform Disorders") was relevant. With one psychologist's examination and another psychologist's testimony about the results, Mr. Davison does not identify any other steps that should have been taken to develop the record containing a somatoform disorder.

In sum, based on this record, we conclude that there was not sufficient evidence to suggest a reasonable possibility that a severe impairment exists. Accordingly, we cannot say that the ALJ failed in his duty to develop the record.

**C. RFC Assessment**

Mr. Davison next argues that the ALJ erred in making the RFC determination because he erroneously (1) failed to give deference to the diagnoses and opinions of his treating physician; (2) relied on Global Assessment Functioning (GAF) scores and ignored a decline in those scores after discharge; and (3) failed to include mental limitations in the RFC.

In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id.* The RFC assessment is made based on all the evidence in the record, both medical and non-medical. *See id.*

After considering the record evidence, the ALJ made the following RFC determination:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except he can lift and/or carry 50 lbs. occasionally and 25 lbs. frequently; sit for at least 6 hours during an 8-hour workday; and stand and/or walk at least 6 hours during an 8-hour workday; and frequently stoop. He can understand, remember, and carryout [sic] those types of work procedures and instructions that can be learn[ed] in 30 days. These tasks should be simple repetitive tasks and have a reasoning, math, and language level of 1…. The claimant can have occasional work interaction with supervisors and co-workers, but should have no work interaction with the public. The work should be repetitive in nature occurring in an unchanging work environment.

Aplt. App., Vol. 1 at 18.

- 11 -

Mr. Davison first claims that the ALJ erred in making the RFC determination because he relied on the opinions of consultative examiners and instead should have given "deference to the diagnoses and opinions of [Mr. Davison's] treating medical providers." Aplt. Br. at 20. As a preliminary matter, in the limited medical record provided to the ALJ, the only treating medical providers who saw Mr. Davison were those who saw him in the emergency room department and during his brief hospitalizations. It is doubtful that these providers are "treating sources." *See* 20 C.F.R. § 404.1502 (defining "treating source" as someone who has or has had an ongoing treatment relationship with the claimant); *id.* § 404.1527(c)(2)(i) (providing that the longer a treating source has treated a claimant and the more times, the more weight is given to that provider's opinion); *see also Doyal*, 331 F.3d at 763 (providing that a relationship of both duration and frequency is required for a treating relationship). Even assuming these physicians qualify as "treating" physicians under the regulations, the record shows the ALJ in fact accepted their diagnoses of Mr. Davison and found such impairments severe. *See* Aplt. App., Vol. 1 at 16, 20.

As to any opinions of his "treating physicians," Mr. Davison only points us to a psychiatrist's opinion that Mr. Davison is "totally and permanently disabled" and unable to work. *Id.*, Vol. 2 at 254. He briefly suggests the ALJ failed to consider this opinion because the ALJ stated in his decision that there was no "indication in the treatment records of opinions from treating or examining mental health professionals indicating that the claimant is disabled." *Id.*, Vol. 1 at 21-22. But we

- 12 -

conclude that any error in failing to consider this opinion was harmless. The psychiatrist's opinion that Mr. Davison is disabled is not a "medical opinion" but, instead, an opinion on the ultimate issue of disability which is a matter reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Such opinions, even when offered by a treating source, are never entitled to controlling weight or given special significance. Soc. Sec. Ruling (SSR) 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996).

Further, the opinion relied on by Mr. Davison is from a "Med-9 Form" for the Colorado Department of Human Services – a form simply consisting of boxes to be checked. It is a conclusory form, which lacked any functional findings or narrative which would support its conclusion. *See Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (concluding that ALJ properly gave no weight to a Med-9 Form). Given the lack of evidence to support the psychiatrist's opinion of Mr. Davison's disability, we conclude that any error in failing to consider the opinion was harmless as it would not have affected the ALJ's RFC determination.

Mr. Davison next takes issue with the ALJ's RFC assessment because of the ALJ's reliance, in part, on a GAF score of 65 upon Mr. Davison's discharge from his first hospitalization. The ALJ indicated this score was "reflective of only mild symptoms or difficulties." Aplt. App., Vol. 1 at 20. But Mr. Davison argues that subsequent GAF scores declined steadily and "reflect[ed] [his] functioning when he was at his best." Aplt. Br. at 22.

The GAF scale is used by clinicians to report an individual's overall level of functioning. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 2000). The ALJ was aware of Mr. Davison's later GAF scores, as he noted in his decision the GAF score of 55, diagnosed during a January 2012 consultative examination, and GAF score of 45, diagnosed upon discharge from Mr. Davison's second hospitalization in March 2012.[4] *See* Aplt. App., Vol. 1 at 20-21. The ALJ did not further discuss Mr. Davison's GAF scores, but he was not required to do so. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Mr. Davison's GAF scores did not include explanations for the ratings given and, further, did not indicate that Mr. Davison was unable to work. Accordingly, these lower GAF scores do not undermine the ALJ's conclusion concerning the seriousness of Mr. Davison's mental status or ability to work. And, in any event, the ALJ's RFC determination reasonably accounted for any work-related mental limitations the GAF scores evidenced, including the limitation to occasional work interaction with supervisors and

---

[4]     A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34. A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*.

co-workers and no interaction with the public. *See* Aplt. App., Vol. 1 at 18, 22. Further, the RFC limited Mr. Davison to a reduced range of work involving simple, repetitive tasks.

But despite these restrictions, Mr. Davison also argues that the RFC assessment is erroneous because the ALJ disregarded evidence that Mr. Davison is illiterate and the ALJ's own finding that Mr. Davison has borderline intellectual functioning. As to Mr. Davison's claimed illiteracy, as previously noted, the record does not reflect that Mr. Davison has been diagnosed as illiterate. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment . . . including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1. Although the record does not evidence any functional limitations due to Mr. Davison's illiteracy, the ALJ's RFC determination nevertheless assigned the lowest Language Development level, level one, on the Scale of General Education Development (GED) as set forth in the Dictionary of Occupational Titles (DOT). *See* Aplt. App., Vol. 1 at 18.[5] Mr. Davison's claim that the ALJ disregarded his impairment of borderline intellectual functioning is also without merit. The RFC included the lowest

---

[5] Each job description in the DOT includes a definitional trailer that includes GED levels pertaining to reasoning development, mathematical development, and language development. *See* Dictionary of Occupational Titles, Appendix C – Components of the Definitional Trailer, 1991 WL 688702 (4th ed. 1991).

educational profile and a reduced range of unskilled work involving simple and repetitive tasks.

We conclude the ALJ's RFC determination is supported by substantial evidence.

### III.  Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge